UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER SCHACHTEL AND THE LAW OFFICE OF ALEXANDER SCHACHTEL<br><br> Plaintiffs *pro se*,<br><br>         v.<br><br>ALPHABET, INC. d/b/a "GOOGLE" and REGAN ANDREW BATES "GOOGLE LOCAL GUIDE,"<br><br> Defendants. | Case No.:<br><br>*Civil Action*<br><br>**COMPLAINT** |

Plaintiffs do hereby say and allege as follows by way of Complaint:

## OVERVIEW OF LEGAL ACTION

1. <u>FEDERAL COMMON LAW SHOULD IMPOSE A DUTY OF CARE ON ITS CORPORATE TECHNOLOGY LEADERS SUCH AS GOOLGE TO ACT LIKE RESPONSIBLE PROPERTY OWNERS AND POLICE VIRTUAL SPACE ON THE INTERNET</u>

One question presented by this action is whether one of the world's largest and most powerful corporations can continue to operate the Internet in a morally ambivalent manner, or whether Google owes a legal duty of care to its customers, and an ethical duty to society, to provide some level of protection to online business owners by implementing common sense review verification and screening practices to protect local businesses from random acts of cyber defamation and vandalism.

As the world transitions rapidly towards a virtual society, and physical retail stores are quickly replaced by exclusively digital fronts of commerce, why should the law arbitrarily decline to impose a duty upon the owners of society's virtual forums, such as Google, to exercise reasonable diligence in protecting the safety of its patrons, as the law does by imposing a duty of care towards owners of physical stores, malls, event hosts, etc.

Under current law, section 203 of the "Communications Decency and Privacy Act, a piece of legislation that was drafted in 1996 when the internet was in its utter infancy, Google, which famously lives by the motto "Don't Be Evil" or "Do the Right Thing," contends that it owes no legal obligation to police the accuracy of information that appears on its virtual property. Google claims that its "company policies" prevent it from removing false, scurrilous, and utterly defamatory "reviews" that are left by disgruntled clients, enemies, or rivals of local businesses online.

How can our increasingly virtual society continue to function civilly if we allow the internet to remain a morally unregulated hotbed of hatred, anonymity, and mob rule? Without the imposition of a legal duty of care on Google and other owners and parties in control of our virtual space, civic progress may be further stymied or halted indefinitely.

2.   <u>FEDERAL COMMON LAW SHOULD SHIFT THE BURDEN FROM SMALL BUSINESS OWNERS TO TECHNOLOGY MEGACONGLOMERATES TO POLICE DEFAMATORY SPEECH ONLINE</u>

Are we a society that protects its large corporate monopolies at the expense of our local and small business owners? The second question raised by this lawsuit is whether legislative policy and Federal common law can truly stand for the principle set forth in the preceding sentence in good sense. Current legislation and above-mentioned liability immunity render it

nigh impossible for small business owners who maintain online profiles on Google, and some other online platforms, to effectively combat defamatory customer reviews.

A small business owner in America, in order to remove an utterly slanderous and false or outrageous statement made by a customer or alleged customer about the business online, must actually file a civil lawsuit and obtain a court order from a judge declaring the speech defamatory, in order to have the review *even considered* for removal by Google. The absurd cost, expense, and duration of litigation which a business owner must engage in to police utterly false speech represents a moral dereliction of societal duty in imposing an unfair burden on the business owner which could be borne at far lesser economic cost by Google and its brethren.

In light of the devastation wrought on the American economy by COVID-19, which has been particularly onerous towards small businesses, who are without capital reserves to endure a protracted shutdown of their operations, this policy situation has been rendered more untenable and morally outrageous.

## PARTIES AND BACKGROUND

1. Plaintiff is an individual and proprietor of a small law practice operating in Jersey City, New Jersey. Plaintiff's business has, over the past two years, been repeatedly victimized by cyber defamation from disgruntled former clients and from apparent personal enemies or embittered adversaries.

2. Alphabet Inc. ("Google") is a multinational corporation with headquarters in Mountainview, California. Google controls an estimated eighty percent (80%) of global search engine traffic according to a 2017 web article[1].

3. Plaintiff is a paying customer of Google, spending tens of thousands of dollars per year

---

[1] https://www.searchenginejournal.com/googles-share-search-ad-market-projected-grow-80-2019/189993/

for advertising services with Google Ads from 2017 to present.

### a. First Protracted Saga of Defamation of Schachtel Law

4. In June 2018, a disgruntled prospective client of the Plaintiff's office named "Ping Zhang" left an insensible and deranged defamatory review on Plaintiff's "google my business" webpage, which appeared publicly on all Google searches for the Plaintiff's name or the Plaintiff's business.

5. Plaintiff followed Google user policies to request the removal of the false and defamatory Review, however, Google refused to remove the review for over 12 months, claiming that the review "did not violate its policies."

6. Google refused to explain to the Plaintiff whether it had taken any steps to verify the truthfulness of the review or the legitimacy of the user publishing the review.

7. As a result of Google's inaction, Plaintiff was compelled to file suit against the defaming party in the Superior Court of New Jersey, Hudson County, which action is currently proceeding under HUD-L-3590-18.

8. The defaming party, Zhang, in that action been placed in default, with prejudice, by Order of the Superior Court of New Jersey, and her pleadings have been stricken by court order as she has failed to respond to any discovery demands served upon her by the Plaintiff.

9. Ultimately, some 12 months after the reviews were posted initially, and republished many times thereafter by Zhang under her own name and various pseudonyms, Google did remove Zhang's defamatory reviews, without Court order, but by that time the reviews had caused tens if not hundreds of thousands of dollars of estimated damages to the Plaintiff's business by way of lost revenues.

### b. Second Protracted Incident of Defamation of Schachtel Law

10. Beginning or around May 8, 2020 and continuing for about ten (10) days thereafter, Plaintiff's business was the subject of a coordinated cyber defamation campaign, during which time six to nine negative reviews were left on Plaintiff's "google my business" web pages from a man named Regan A. Bates and his friends or associates.

11. Bates is a natural person with a last known address of 60 11st Street, NE, Apt. 1611, Atlanta, Georgia.

12. At the time this cyber defamation campaign took place, the Plaintiff's business was essentially closed to new customers due to COVID-19 and the Plaintiffs only entertained a handful of incoming phone calls from May 8-May 17, 2020.

13. Plaintiffs have no record of receiving a call from Regan Bates who has never, to Plaintiff's knowledge, been an actual or prospective client of Schachtel Law.

14. Nonetheless, Mr. Bates personally published at least two (2) defamatory reviews of Schachtel Law on the firm's Google My Business webpage. The motives for these publications are unknown to Plaintiff but the best guess is that he was paid to leave these reviews by a personal or professional adversary or competitor of the firm or the Plaintiff Schachtel himself.

15. Mr. Bates has left similar negative reviews on at least eleven (11) other businesses in Northern New Jersey and the Atlanta, Georgia region in the past (12) months.

16. Despite Bates' actions in defaming numerous local businesses, Google Inc. has incredibly awarded Mr. Bates with "Local Guide Status."

17. "Local Guide Status" is a unique badge awarded by Google to certain persons who leave a high volume of reviews, or reviews which Google deems to be credible, of local businesses on the Internet. The mark bestows a badge of imputed higher credibility to the reviewer and is displayed publicly along the individual's review when the Local Guide leaves reviews online.

18. The conferral of "local guide status" by Google Inc. on Mr. Bates constitutes a value judgment on the authority of his speech and should void any liability protection afforded to the company for defamation under section 203 of the Communications Decency Act.

19. In addition to Bates' reviews under his own name, there were five additional negative reviews published in the next several days about the Plaintiff on its Google My Business web pages.

20. Accordingly, on May 17, 2020, after discovering the negative reviews, Plaintiff wrote to Google asking that the false reviews be removed or that some steps to ensure verification of the reviewers be taken.

21. Several hours after Plaintiffs submitted the removal requests, Google responded to advise that it was refusing to remove any of the false reviews, claiming, after brief investigation, without any further detail, that the flagged reviews "did not violate its policies."

22. After Google failed to take action, Plaintiff wrote a reply to Mr. Bates false review and instructed him to remove his review immediately or risk being sued for defamation.

23. After Plaintiff communicated this reply to Mr. Bates, he deliberately altered or instructed his confederates to alter prior reviews to enhance his attack on the Plaintiffs.

24. There were four separate fake accounts created by Mr. Bates and his colleagues to perpetrate these attacks on Google.

25. The names on these accounts were "Ice Man," "Supa R.," and "Alexandria Snatchel" which is obviously a vulgar and offensive mockery of the Plaintiff's name.

26. None of these accounts had any other prior activity or reviews on Google aside from leaving negative reviews on the Plaintiffs' business.

27. All of the above mentioned negative reviews under false and clearly fictitious accounts

were reported to Google Inc., but Google flatly declined to take any action to remove these reviews, stating that the reviews "did not constitute a violation of Google policies."

28. Google, through its inaction and failure to regulate its own platform, has aided and abetted the commission of cyber vandalism and cyber defamation against the Plaintiff and his business.

29. Google has also negligently failed to implement reasonable safeguards to protect the Plaintiff, its customer, from wanton and malicious defamatory cyber attacks by users of its search engine, maps, and related virtual tools and platforms.

30. By failing to take any responsibility for its own actions and platforms, Google has allowed itself to become a tool of malice by those who would do evil acts on the internet, and destroys the public's trust and integrity by shirking moral obligation of any nature.

31. Google is so morally derelict that it actually promotes the reputation of serial defamers of local businesses like Mr. Bates, by conferring "local guide" status awards upon them.

## JURISDICTION AND VENUE

32. The court has diversity jurisdiction in this matter under 28 U.S.C. 1332 due to the fact the Plaintiff is a resident of New Jersey and the Defendant is a resident of California.

33. Venue is proper in the Federal District Court for the District of New Jersey pursuant to 28 U.S.C. 1391 as the district where the Plaintiff resides and the district where the cause of action accrued.

## COUNT ONE (DEFAMATION)

34. The factual allegations set forth above are repeated and realleged as if set forth more fully herein.

35. On or around May 8, 2020, Regan A. Bates knowingly and recklessly published false

statements of fact about the services offered by the Plaintiffs, stating "This guy was a complete waste of my time, I found a way better lawyer in about 15 minutes" and "Complete waste of my time...bye bye."

36. Mr. Bates knowingly published false statements of fact despite the reality that he has never been a client of the Plaintiffs' firm and the fact that he has never spoken to the Plaintiff personally or to anyone at the Plaintiffs' office.

37. Mr. Bates thereafter personally authored, or encouraged others to personally author, numerous additional defamatory reviews about the Plaintiff's business under the false account names, "Alexandria Snatchel," "Supa R." and "Ice Man."

38. These false reviews included false statements such as the following "WHAT HAPPENS WHEN A LAWYER FALSELY CLAIMS TO A 3RD PARTY THAT A PERSON DID NOT MAKE CONTACT WITH HIS OFFICE IN ORDER TO DESTROY THAT PERSON'S CREDIBILITY AS A LOCAL GUIDE IN NEW JERSEY? I'M GOING TO REPORT THIS FIRM TO THE STATE BAR FOR CONTINUOUS ONLINE THREATS AS WELL" which was published on May 18, 2020 by Mr. Bates under the false account "Alexandria Snatchel."

39. Mr. Bates published another false statement of fact on May 18, 2020, "I was extremely disappointed by the lack of professionalism and understanding of my reported issue. I believe this attorney is poor value and obviously does not match the highlights listed on the other reviews. Save some money and look for a higher quality attorney," which was published under the false account "Ice Man."

40. Mr. Bates then published three other false reviews under the monikers "Ice Man" and "Supa R." which did not leave comment but merely gave the firm a 1-star rating.

41. Google acts as a moderator of content that appears on its platforms, including google

business reviews, google maps, and related forums, by publishing, implementing, and regularly revising internal policies containing guidelines for what it considers "acceptable speech."

42. As discussed above, Google is also in the habit of rendering value judgments on reviewers and on the credibility of certain reviewers which it calls "local guides."

43. Google has awarded Mr. Bates with "local guide" status, despite the fact that he has engaged in a deliberate campaign of defamation against the Plaintiffs.

44. Accordingly, Google has abandoned the role of a neutral "host" of content, but in this instance has acted as publisher, critic and moderator of the content of its users and must face civil liability as a consequence.

45. Moreover, despite the fact that its policies claim to prohibit "offensive or vulgar content" Google has allowed the false reviews concerning Plaintiff that were published under the pseudonym, "Alexandria Snatchel" an offensive mockery of the Plaintiff's name, to remain visible.

46. From 2018-2019, Google failed to remove an untruthful and blatantly defamatory review about the Plaintiff's office from Ping Zhang, costing the Plaintiff substantial lost revenues and lost business opportunity and damage to existing client relationships.

47. Again from May 8, 2020 to date, Defendant has been complicit in failing to halt a coordinated cyber defamation campaign on Plaintiff's business and in the publication of six to nine false reviews totally lacking in credibility or supporting information.

48. Defendant has acted with gross negligence if not recklessness in failing to properly investigate, vet, or otherwise apply any meaningful scrutiny to the defamatory statements which are maintained on its forum, despite reasonable opportunity and repeated requests from the Plaintiff.

49. Upon any reasonable investigation, Google should easily be able to discern that the reviews left on the Plaintiff's website are false and illegitimate.

50. Google has failed to act and is therefore jointly and severally liable for the defamatory behavior of Mr. Bates and previously Ms. Zhang.

**WHEREFORE**, the Plaintiff hereby demands judgment against all Defendants on the first count of the compliant, for defamation, in the amount of ten million dollars ($10,000,000.00) by way of:

    A. Compensatory Damages.

    B. Economic Damages.

    C. Consequential Damages.

    D. Punitive Damages.

    E. Costs of suit.

    F. Attorney's fees in this matter and reimbursement of previously paid attorneys' fees.

    G. Any other relief which the Court may deem proper.

**COUNT TWO (TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE)**

51. The factual allegations set forth above are repeated and reiterated as if more fully set forth herein.

52. As related above, Mr. Bates has engaged in a deliberate and malicious campaign of defamatory speech against the Plaintiffs which began on or around May 8, 2020 and has continued to date through May 17, 2020.

53. Mr. Bates has further engaged in criminally proscribed cyber stalking, cyber harassment, and cyber defamation of the Plaintiff and his business through published attacks on Google, Google maps and other Google-owned platforms.

54. Mr. Bates has acted with actual malice with the intent to cause damage to Plaintiffs' business, as he undertaken deliberate efforts to sabotage the Plaintiffs' reputation professionally through a coordinated campaign of cyber defamation.

55.  Mr. Bates' campaign of cyber defamation has caused and will continue to cause substantial economic damages to the Plaintiffs' business, whose online reputation is paramount to ongoing marketing efforts and to its efforts to retain existing customers and clients.

56.   Google has been complicit in Bates' acts constituting tortious interference as it has failed, despite being apprised of the likelihood of criminal cyber stalking, harassment, and other civilly illicit conduct by Mr. Bates and false accounts which he created or has encouraged others to create, has taken no action to deter Mr. Bates from continuing in this course of conduct.

57.  Google has in fact encouraged Bates in his campaign of criminal cyber harassment and civil defamation by awarding him with "Local Guide Status" and by refusing to alter or amend the conferral of this status, despite clear evidence that Mr. Bates is deranged, malevolent, and untrustworthy.

**WHEREFORE**, the Plaintiff hereby demands judgment against all Defendants on the second count of the compliant, for defamation, in the amount of ten million dollars ($10,000,000.00) by way of:

    A.  Compensatory Damages.

    B.  Economic Damages.

    C.  Consequential Damages.

    D.  Punitive Damages.

    E.  Costs of suit.

    F.  Attorney's fees in this matter and reimbursement of previously paid attorneys' fees.

  G. Any other relief which the Court may deem proper.

## COUNT THREE (CONSPIRACY TO COMMIT CYBER CRIMES AND CYBER DEFAMATION AGAINST PLAINTIFFS)

58. The factual allegations set forth above are repeated and reiterated at length as if more fully set forth herein.

59. Defendant Bates conspired with Defendant Google to publish, republish, edit, alter, and amend knowingly or recklessly false statements of fact about the Plaintiffs online.

60. Defendant Bates conspired with Defendant Google to engage in a campaign of cyber stalking, harassment, and other criminal online conduct against the Plaintiffs.

61. The two Defendants entered into a tacit agreement to damage the reputation and business of the Plaintiffs by cooperating in the dissemination, authorship and promotion of, published defamatory speech regarding the Plaintiffs and further by coordinating the deliberate sabotage of the Plaintiffs' business reputation.

  **WHEREFORE**, the Plaintiff hereby demands judgment against all Defendants on the third count of the compliant, for defamation, in the amount of ten million dollars ($10,000,000.00) by way of:

  A. Compensatory Damages.

  B. Economic Damages.

  C. Consequential Damages.

  D. Punitive Damages.

  E. Costs of suit.

  F. Attorney's fees in this matter and reimbursement of previously paid attorneys' fees.

  G. Any other relief which the Court may deem proper.

DATE: 5/18/20                                                              By: */s/ Alexander Schachtel*
**Alexander Schachtel, Esq.**
**Law Office of Alexander Schachtel**
**648 Newark Avenue**
**Jersey City, NJ 07306**
**(p) 201-925-0660**
**(e) xschachtel@gmail.com**
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues so triable.

DATE: 5/18/20                                                              By: */s/ Alexander Schachtel*
**Alexander Schachtel, Esq.**
**Law Office of Alexander Schachtel**
**648 Newark Avenue**
**Jersey City, NJ 07306**
**(p) 201-925-0660**
**(e) xschachtel@gmail.com**
*Attorney for Plaintiff*

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, notice is hereby provided that Alexander Schachtel, Esq, is designated as trial counsel in this matter.

DATE: 5/18/20                                                              By: */s/ Alexander Schachtel*
**Alexander Schachtel, Esq.**
**Law Office of Alexander Schachtel**
**648 Newark Avenue**
**Jersey City, NJ 07306**
**(p) 201-925-0660**
**(e) xschachtel@gmail.com**
*Attorney for Plaintiff*

**CERTIFICATION PURSUANT TO R. 4:5-1**

I hereby certify that, except as set forth below, the matter in controversy is not the subject of any other pending or contemplated Court action or arbitration, nor am I presently aware of any other party who should be joined in this action, subject to the information revealed through discovery.

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

DATE: 5/18/20

Alexander Schachtel, Esq.
Law Office of Alexander Schachtel
648 Newark Avenue
Jersey City, NJ 07306
(p) 201-925-0660
(e) xschachtel@gmail.com
*Attorney for Plaintiff*
